UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAWKI AHMAD SHARIF OMAR,<br><br>                              Petitioner,<br><br>v.<br><br>MARKWAYN MULLIN, Secretary, U.S. Department of Homeland Security, 2801 Nebraska Avenue, NW Washington, DC 20528;<br><br>KASH PATEL, Director, Federal Bureau of Investigation, 935 Pennsylvania Avenue, NW, Washington, DC 20535;<br><br>DAVID CUMMINS, Administrator, Transportation Security Administration, 6595 Springfield Center Drive, Springfield, VA 22150;<br><br>STEVEN L. MCQUEEN, Director, FBI Threat Screening Center, 935 Pennsylvania Avenue, NW, Washington, DC 20535;<br><br>MARCO RUBIO, Secretary, U.S. Department of State, 2201 C Street, NW, Washington, DC 20520;<br><br>TODD BLANCHE, Acting Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC 20530,<br><br>                              Respondents. | MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br><br>Case No.: 26-cv-2315 |

Motion for a TRO

MOTION FOR AN EMERGENCY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

Petitioner Shawki Ahmad Sharif Omar, by and through his undersigned counsel, Dr. Curtis F.J. Doebbler, hereby moves this Court for a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b) and Local Civil Rule 65.1(a). Petitioner respectfully requests that the Court enter the accompanying Proposed Order and grant the relief set forth below to prevent imminent, irreparable harm to Petitioner while his Petition for a Writ of Habeas Corpus is pending.

Petitioner request that the Respondents be enjoined for any action that would prevent Petitioner, a U.S. citizen from returning to the United States or cause him to be detained aboard by foreign authorities.

This motion is supported by the Habeas Petition and Complaint for Declaratory, Injunctive, and Equitable Relief that sets out the basic legal arguments underlying this Motion, the declarations and exhibits attached thereto that have been filed with the Court, and the Proposed Order submitted herewith. A Memorandum of Points and Authorities is being prepared and will be filed as soon as possible.

I. STATEMENT OF FACTS

1.  Petitioner is a 64-year-old naturalized United States citizen who was detained by United States military forces in Iraq on October 29-30, 2004. He was held by U.S. forces without charge for nearly seven years and subjected to torture, including being hung from the ceiling by his bound hands, beaten, and subjected to electric shock. His then-pregnant wife was also tortured in his presence, resulting in their child being born with disabilities. Habeas Petition, para. 22.

2.  In July or August 2011, Petitioner was transferred to Iraqi custody. He was convicted in proceedings that the United Nations Working Group on Arbitrary Detention found to be unfair and arbitrary. Habeas Petition, para. 23. On April 8, 2026, Petitioner was released after an Iraqi judicial authority determined that he had served beyond the lawful term of his sentence. The U.S. Consulate in Erbil issued Petitioner a temporary U.S. passport valid until March 27, 2027. Habeas Petition, para. 25.

3.  Petitioner traveled to Istanbul, Türkiye, to recover and meet family members. On May 26, 2026, he purchased a ticket on Turkish Airlines flight TK187 from Istanbul to Washington Dulles, scheduled to depart on June 13, 2026. Habeas Petition, para. 27. His wife, Sandra Omar, notified U.S. authorities repeatedly of his travel plans and received no reply indicating any problem. Habeas Petition, para. 28.

4.  At approximately 4:00 a.m. on June 13, 2026, Petitioner arrived at the Turkish Airlines check-in counter. He presented his valid U.S. temporary passport. A check-in counter manager informed Petitioner that the airline had received an email from United States authorities approximately ten hours earlier stating that Petitioner was not allowed to board the flight. The manager explicitly stated that the denial was the result of a communication from the United States government placing Petitioner on a No Fly List. Habeas Petition, para. 29.

5.  Petitioner received no prior notice, explanation, or opportunity to contest the decision. He has never been charged with any crime in the United States nor does he have any criminal record in the United States. Habeas Petition, para. 30.

6.  Stranded in Istanbul with limited resources, Petitioner traveled to Gaziantep, a city in southern Türkiye, to find more affordable accommodations. On June 22, 2026, while walking in the street with a real estate agent, Mr. Mustafa Simsek, Petitioner was detained by officers identified by Mr. Simsek as being from Gaziantep Provincial Security Directorate. The officers refused Mr. Simsek's request to accompany Petitioner. Habeas Petition, paras. 31-32.

7.  On June 23, 2026, Petitioner called Mr. Simsek from detention. Petitioner stated that he had been detained by Turkish authorities who told him they were acting "on a request from the United States authorities" and that he had been taken to a deportation center. Petitioner was crying and in bad condition. Habeas Petition, para. 33.

8.  On June 24, 2026, the U.S. Consulate Adana acknowledged Petitioner's detention, stating: "Based upon the information available to us, we understand Mr. Omar is being held at the deportation center located in Gaziantep, in southeastern Türkiye. We have expressed interest in his welfare and well-being and emphasized the potential that he may have medical needs. We understand that Mr. Omar is doing well. We are requesting a consular visit, as we do in other cases of detention of U.S. citizens." Habeas Petition, para. 40.

Motion for a TRO

9. Petitioner's deportation is imminent. Turkish authorities have indicated their intent to deport him to an unknown destination. Petitioner faces a real risk of torture if deported to Jordan—a country that has interrogated his family members about his whereabouts. Petitioner has a documented history of being tortured by U.S. and Iraqi authorities. Habeas Petition, paras. 56-57.

10. If Petitioner is deported to an unknown country before this Court can act, he will suffer irreparable harm: his constitutional rights to due process will be violated, he may be subjected to torture, and he will be separated from his wife and nine U.S. citizen children. Habeas Petition, para. 58.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and 5 U.S.C. § 702 (APA waiver of sovereign immunity). Venue is proper in this District under 28 U.S.C. § 1391(e) because Respondents are federal officers located in the District of Columbia.

## III. LEGAL STANDARD

12. A temporary restraining order is warranted when a movant demonstrates: (1) a likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) the balance of equities tips in the movant's favor; and (4) the public interest supports relief. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). A temporary restraining order is appropriate in an emergency situation where, as here, "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

## IV. ARGUMENTS

13. Respondent's actions have violated a litany of Petitioner's rights. Each of the rights that Petitioner argues have been violated, and which have been set out in more detail in the habeas petition, are briefly summarized below.

Motion for a TRO

A.  PETITIONER HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

14. Petitioner has a strong likelihood of success on the merits of his habeas claim. He is a United States citizen held in the constructive custody of the United States through the intermediary of Turkish authorities.

i.    The Writ Of Habeas Corpus Should Be Issued In Favour Of Petitioner

15. Petitioner, a United States citizen constructively detained in Türkiye at the behest of the United States, invokes 28 U.S.C. § 2241. His placement by Respondents on a No Fly List bars his return to the United States as does his detention in Türkiye by Turkish authorities pursuant to a request and active involvement by Respondents. Furthermore, Turkish authorities have informed Petitioner they were acting "on a request from the United States authorities." Habeas Petition, para. 33. The U.S. Consulate has acknowledged Petitioner's detention and is actively engaged with Turkish authorities. Habeas Petition, para. 40.

16. The habeas statute extends to American citizens held overseas by American forces or at the behest of the United States. *Munaf v. Geren*, 553 U.S. 674, 688-89 (2008). Unlike in *Munaf*, however, now Petitioner does not seek to enjoin his transfer, but merely to prevent interference with his right to return to the United States as a U.S. citizen with a valid U.S. passport who was held for years without charge by the Respondents. The doctrine of constructive custody applies where the United States exercises control over a citizen's detention through a foreign intermediary. *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 41 (D.D.C. 2004). In this case, the Respondents exercise constructive custody over Petitioner because they have formally acknowledged that (1) Petitioner is in the custody of Turkish authorities; (2) they has "expressed its interest" in his detention; (3) they are aware of Petitioner's poor health, (4) they are "requesting a consular visit"; and (5) they have information about Petitioner's situation. Moreover, Turkish officials have stated to Petitioner that the United States has blocked him from flying and have requested his detention. Evidence of Respondents "constructive custody" includes the statements of the Consul in Adana, Türkiye, responding to the diplomatic note from the Turkish Foreign Ministry that indicates that government's intention to send him to the United States and "Mr. Omar's 'procedures have been completed…'" by the Turkish authorities while at the same time the Respondents are again blocking Petitioner from flying directly to the United States. *See* Email from ACS

Adana dated 30 Ju 2026, attached as Exhibits A, and Statement of Ahmed Omar, attached as Exhibits B.

17. The Respondents' use of the No Fly List to prevent Petitioner from returning to the United States, combined with its orchestration of his foreign detention, constitutes a severe restraint on individual liberty sufficient to satisfy the custody requirement. *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).

18. The government cannot now argue that it lacks control over Petitioner's detention when it has affirmatively exercised its authority to intervene to prevent him from exercising a constitutional right to return to the United States.

19. The Petitioner is a U.S. citizen detained in Türkiye at the United States' direction. The No Fly List blocks his return, and Turkish authorities hold him because the U.S. requested it, effectively making this a U.S. detention. Federal courts have jurisdiction over American citizens held abroad under U.S. control. Custody is not limited to physical imprisonment but includes such restraints. The government cannot avoid court review by using foreign officials as its agents. When foreign authorities act at U.S. behest, the detention counts as U.S. custody.

    ii.    Petitioner's Fifth Amendment Procedural Due Process Rights Are Being Violated

20. Petitioner is placed on the No Fly List without notice, explanation, or an opportunity to respond. This violates his right to due process by preventing his return to the United States. Travel is a fundamental freedom, and being barred from returning home is a particularly serious deprivation. The lack of basic procedural protections—no notice, no stated reasons, no chance to be heard—makes this action unconstitutional.

21. Petitioner's placement on the No Fly List without notice, explanation, or an opportunity to be heard violates his Fifth Amendment right to procedural due process. Petitioner's right to return to the United States is a fundamental right protected by the Due Process Clause. In *United States v. Laub*, 385 U.S. 475, 481 (1967), the Supreme Court held that "[t]he right to travel is part of the 'liberty' of which a citizen cannot be deprived without due process of law." *Quoting Kent v. Dulles* 357 U.S. 116, 125 and referring to *Aptheker v. Secretary of State*, 378 U.S. 500, 517 and *Zemel v. Rusk*, 381 U.S. 1 (1965). The government's action is

    

also arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Habeas Petition, paras. 70-72.

### iii. Petitioner's Fifth Amendment Substantive Due Process Rights Are Being Violated

22. The government's actions violate the constitutional right to family integrity and the right to return home. Being forcibly separated from his wife and nine U.S. citizen children after 22 years of separation is a serious deprivation of liberty. As a U.S. citizen, Petitioner has the fundamental right to return to and live in his own country. The government cannot bypass constitutional protections by having foreign authorities detain him. Denying him the ability to return home and reunite with his family violates his substantive due process rights.

### iv. Petitioner Is Being Denied Due Process Under The Administrative Procedure Act

23. Respondents' placement of Petitioner on the No Fly List without notice, explanation, or opportunity to respond constitutes arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A). The APA requires courts to "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The designation lacks procedural safeguards and is unsupported by any articulated rationale. Agency action severely impacting fundamental rights without any process is the paradigm of arbitrary and capricious decision-making. The No Fly List designation effectively prevents Petitioner from returning to the United States, a severe deprivation requiring heightened procedural protections. The absence of notice, statement of reasons, or opportunity to contest renders Respondents' actions unlawful.

### v. Petitioner's Rights Under The Citizen Non-Detention Act Are Being Violated

24. Respondents violated 18 U.S.C. § 4001(a), which provides that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." The Citizen Non-Detention Act prohibits the Respondents from detaining any citizen without explicit authorization from Congress. By arranging for Turkish authorities to detain Petitioner as U.S. agents, the government has violated this law. Petitioner has never

been charged with or convicted of any crime in the United States, there is no warrant for his arrest, and he is being held indefinitely without charges. This is exactly the kind of unlawful detention the Act was designed to prevent.

25. The Respondents orchestration of Mr. Omar's detention through a foreign intermediary is the functional equivalent of U.S. detention and violates the spirit, if not the letter, of 18 U.S.C. § 4001(a).

> vi.    The Respondents' Actions Are Inconsistent The Convention Against Torture And Its Implementing Statute

26. Respondents violate the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (hereinafter "CAT") and its implementing statute, 18 U.S.C. § 2340A, by acting with Turkish officials to detain Petitioner where torture is widespread. Respondents are bound by treaty obligations under the Supremacy Clause of the U.S. Constitution, Article VI, Clause 2 and in the case of this treaty, these obligations are implemented by statute. Respondents knew or should have known about the systematic use of torture in Turkish detention facilities as Respondents themselves reported on the use of torture in Turkish prisons. *See* DOS Report on Türkiye, attached as Exhibit C. Transferring someone to a place where they face torture outside the United States and thereby participating in their torture is explicitly prohibited by the treaty and by Statute. This rendition-like practice violates both international and U.S. law.

27. Because the CAT has been implemented by domestic legislation, Respondents' actions also constitute a violation of its implementing statute, 18 U.S.C. § 2340A.

> vii.    The Respondents' Actions Are Inconsistent The International Covenant On Civil And Political Rights And Customary International Law

28. Respondents are violating the International Covenant on Civil and Political Rights by: (1) facilitating torture (Art. 7); (2) denying judicial review of detention (Art. 9(4)); and (3) arbitrarily depriving Petitioner of the right to enter his own country (Art. 12(4)). Treaties are supreme law of the United States according to Article VI, Clause 2 of the Constitution of the United States. Similarly, Respondents are violating customary international law prohibiting arbitrary detention and torture, which the Supreme Court of the United States has repeatedly

held to be part of U.S. law. The ICCPR's protections are binding and enforceable in domestic courts. The right to enter one's own country and freedom from torture are fundamental rights under customary international law. *Hilton v. Guyot*, 159 U.S. 113, 163 (1895).

29. Even if the founders' understanding of international law as directly binding on Respondents is not followed, this Court should interpret U.S. law in a manner consistent with the customary international law.

## B.  PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

30. Petitioner is facing imminent deportation to an unknown destination where he faces a real risk of torture. He has already been detained in Türkiye, with the Turkish government failing to even confirm his detention or provide reasons of it. If he is deported, he will suffer irreparable harm: his constitutional rights to due process will be violated, he may be subjected to torture, he will be separated from his wife and nine U.S. citizen children, and he will be effectively exiled from the State of which he is undisputedly a national, the United States. *See* Habeas Petition, paras. 56-58 and DOS Report on Türkiye, attached as Exhibits C. In a very brief telephone call to his attorney on June 30, 2026, Petitioner indicated that Turkish officials have asked him to go to Jordan, but is refusing and insisting on returning to the United States. *See* Affidavit of Doebbler, attached as Exhibit E, and DOS report on Jordan, attached as Exhibit D. The deprivation of constitutional rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "To deport one who so claims to be a citizen obviously deprives him of liberty ... and may result also in loss of both property and life, or of all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). Furthermore, the ongoing disruption of the family unit and the profound mental anguish intentionally inflicted upon his wife, Sandra Omar, constitutes an independent, irreparable constitutional injury to family integrity. *See Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S. Ct. 1932, 1935 (1977). There can be no public interest in allowing Respondents to proceed with unlawful action. *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

## C.  THE PUBLIC INTEREST AND THE BALANCE OF EQUITIES SUPPORT GRANTING A TEMPORARY RESTRAINING ORDER TO PETITONER

31. When the government is a party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009) and *Am. Ass'n of Pol. Consultants v. U.S. Small Bus. Admin.*, 613 F.Supp.3d 360, 365 (D.D.C. 2020) (*quoting Nken*, 556 U.S. at 435).

32. The public interest strongly favors Petitioner. The public has an interest in ensuring that U.S. citizens are not arbitrarily exiled from their own country and that their constitutional rights are protected. At the same time, Respondents have no legitimate interest in preventing a United States citizen who has recently been issued a US Passport from returning to his own country. Any security concern can be addressed through screening upon arrival or should have been addressed when Respondents held Petitioner without charge for more than six years and tortured him to extract a confession and got none because he had not done anything unlawful. The Respondents' acknowledgment of Petitioner's past and current detention and stated interest in Petitioner demonstrate that Respondents have the capacity to secure his release. Habeas Petition, para. 40.

33. Moreover, the recent development by which the Foreign Ministry of Türkiye has indicated that it wants to send Petitioner to the United States, is evidence that the U.S. authorities—not the Turkish authorities—have the ability to facilitate Petitioner's travel back into the United States, but are affirmatively refusing to do so. *See* Email from ACS Adana dated 30 Ju 2026, attached as Exhibits A.

34. In light of the unlawfulness of the Respondents' actions and the harm to Petitioner, his immediate family, and U.S. citizens more generally, the balance of equities tip sharply in Petitioner's favor.

35. This case is about whether the United States government can exile its own citizens to foreign prisons without charge, without trial, under threat of torture, and without judicial review. If Respondents prevail, the American passport becomes a target, not a shield. The public interest and balance of equities demand that this Court reaffirm the time-honored principle that a citizen cannot be made an alien in their own country, and the borders of the United States must always remain open to its own people.

## V. RELIEF SOUGHT

36. For the reasons stated above, Petitioner respectfully requests that this Court grant this Emergency Motion and issue the requested Temporary Restraining Order.

    A.    Issue a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b) and Local Civil Rule 65.1(a);

    B.    Order Respondents to reframe from any actions or representations that would prevent Petitioner from exercising his right to return to the United States;

    C.    Order Respondents to proactively assist Petitioner in returning to the United States;

    D.    Order Respondents to issue a flight waiver permitting Petitioner to board a flight in Türkiye to fly to the United States;

    E.    Order Respondents to provide this Court with a status report no later than 24 hours from the date of this Order, and every 48 hours thereafter, detailing the steps taken to comply with this Order and the status of Petitioner's repatriation;

    F.    Retain jurisdiction over this matter until Petitioner is safely returned to the United States;

    G.    Waive the bond requirement pursuant to Federal Rule of Civil Procedure 65(c), as Petitioner is a destitute United States citizen currently detained abroad with limited resources, and the public interest in ensuring his safety and constitutional rights outweighs any interest in a bond; and

    H.    Grant such other and further relief as the Court deems just and proper.

## NOTICE AND CERTIFICATION

Petitioner's counsel has attempted to provide notice of this motion to the United States Attorney for the District of Columbia and the Attorney General of the United States. A Certificate of Service is attached hereto, and a separate Certificate of Conference pursuant to Local Civil Rule 7(m) is filed herewith.

    

Respectfully submitted:


/s/Dr. Curtis F.J. Doebbler/s/          .
Dr. Curtis F.J. Doebbler, D.C. Bar No. 481243
DoebblerLaw – The Law Office of Dr Curtis FJ Doebbler
5900 Balcones Drive, 23468
Austin, TX 78731 USA
Email: cdoebbler@gmail.com
Attorney for Petitioner Shawki Ahmad Sharif Omar


Dated: July 1, 2026

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, I electronically filed the foregoing Motion for a Temporary Restraining Order with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

I further certify that, because this is an application for emergency relief, I caused a true and correct copy of the foregoing to be served the same day by CM/ECF on all Respondents.

/s/Curtis F.J. Doebbler/s/_____
Curtis F.J. Doebbler