UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAWKI AHMAD OMAR,

Petitioner,

v.

MARKWAYNE MULLIN, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, Office of the General Counsel MS 0485, Department of Homeland Security, 2707 Martin Luther King Jr. Ave., SE, Washington, DC 20528-0485;

KASH PATEL, Director, Federal Bureau of Investigation, 935 Pennsylvania Avenue, NW, Washington, DC 20535;

DAVID CUMMINS, Administrator, Transportation Security Administration, 6595 Springfield Center Drive, Springfield, VA 22150;

DONALD HOLSTEAD, Director, FBI Threat Screening Center, 935 Pennsylvania Avenue, NW, Washington, DC 20535;

MARCO RUBIO, Secretary, U.S. Department of State, 2201 C Street, NW, Washington, DC 20520;

TODD BLANCHE, Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC 20530,

Respondents.

NOTICE OF CHANGE IN CUSTODIAL STATUS AND STATEMENT OF POSITION REGARDING CONTINUED JURISDICTION AND ONGOING RESTRAINT ON LIBERTY

Case No.: 26-cv-2315

## NOTICE OF CHANGE IN CUSTODIAL STATUS AND STATEMENT OF POSITION REGARDING CONTINUED JURISDICTION AND ONGOING RESTRAINT ON LIBERTY

Petitioner Shawki Ahmad Sharif Omar, by and through undersigned counsel, respectfully submits this Notice to apprise the Court of a change in his custodial status and to state

Petitioner's position that the change does not deprive this Court of jurisdiction over his pending habeas corpus claims. Petitioner remains subject to a continuing and severe restraint on his liberty imposed by Respondents—the No-Fly List and the INTERPOL Green Notice—that prevents him from returning to his own country and that will imminently leave him stranded abroad with no lawful means of return.

## I. CHANGE IN CUSTODIAL STATUS

1. On or about Monday, September 28, 2026, Petitioner was transferred by Turkish authorities from the Binkılıç Removal Centre in Istanbul, Turkey, to the Republic of the Maldives. The transfer was effected by the authorities without Petitioner's written consent, without his signature on any consent form, and without any opportunity for him to contest the transfer.
2. Petitioner is presently in the Republic of the Maldives and is not physically detained. Counsel for Petitioner, Curtis Doebbler, has had direct contact with Petitioner in the Maldives. Petitioner is in the country lawfully and is not in the custody of Maldivian authorities.
3. Petitioner's liberty in the Maldives is severely limited. He entered the Maldives on a thirty-day visa. He may seek an extension of up to ninety days, but he cannot remain in the Maldives indefinitely. He has limited financial resources and no means of supporting himself in the Maldives beyond the immediate term. He has no family, no employment, and no permanent residence in the Maldives.
4. When his permitted stay in the Maldives expires, Petitioner will have no lawful place to go. He cannot return to the United States because of the No-Fly List and the INTERPOL Green Notice. He cannot return to Turkey because the Turkish authorities have removed him. He has no other country that will accept him. He faces the imminent prospect of being stranded or removed to a country where he has no connections and where he may face a substantial risk of torture.
5. A declaration of counsel describing the circumstances in which counsel learned of the transfer and his contact with Petitioner in the Maldives is submitted herewith as Exhibit

6. Petitioner will supplement this Notice if and when additional information becomes available.

## II. STATEMENT OF POSITION REGARDING CONTINUED JURISDICTION

6. Petitioner submits this Notice to discharge his obligation of candor to the Court. He does not concede that the change in his custodial status deprives this Court of jurisdiction over his habeas petition, and he affirmatively states his position that jurisdiction is preserved and that the case is not moot.

### A. Petitioner Remains Subject to a Severe Restraint on His Liberty

7. The habeas statute extends to persons held "in custody in violation of the Constitution." 28 U.S.C. § 2241(c)(3). The Supreme Court has "very liberally construed the 'in custody' requirement for purposes of federal habeas." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). Custody is not limited to physical imprisonment. It includes "restraints not shared by the public generally" that are sufficient to support the writ. *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). The writ is available to any person subject to "severe restraints on individual liberty." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).
8. Petitioner remains subject to two severe restraints on his liberty imposed by Respondents: (a) the No-Fly List, which prevents him from boarding any commercial flight to the United States; and (b) the INTERPOL Green Notice, which is the sole stated basis for his prior detention in Turkey and which remains in effect. Together, those instruments prevent Petitioner from returning to his own country. He cannot board a flight to the United States. He cannot lawfully enter the United States by any means available to him. He is, in effect, exiled from his own country by the action of his own government.
9. The Supreme Court has repeatedly recognized that a citizen's liberty interest in returning to his own country is a core component of the liberty protected by the Fifth Amendment. *Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment."); *Aptheker v. Sec'y of State*, 378 U.S. 500, 505-06 (1964); *Afroyim v. Rusk*, 387 U.S. 253, 268 (1967) (citizenship entails the right to "remain a member of the

national community”). A restraint that prevents a citizen from returning to his own country is a restraint “not shared by the public generally.” *Jones*, 371 U.S. at 240.

10. The D.C. Circuit has made clear that courts must “cut[] through all forms“ and honor the purpose of the writ as a “fundamental safeguard against unlawful custody.” *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 807 (D.C. Cir. 1988) (en banc). It has “consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms.” *Hensley*, 411 U.S. at 350. The absence of physical detention in the Maldives does not deprive Petitioner of the ability to seek the writ, because the restraint on his liberty—his inability to return to the United States—continues.

**B. The Constructive Custody Inquiry Does Not Turn on the Location or Identity of the Physical Custodian**

11. Federal courts have habeas jurisdiction over United States citizens detained abroad where the United States exercises actual or constructive custody, or where the foreign custodian acts at the behest, direction, or control of United States officials. See *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 41 (D.D.C. 2004). The controlling question is whether the United States official charged with the petitioner's detention has “the power to produce” him. *Munaf v. Geren*, 553 U.S. 674, 686 (2008). A change in the identity or location of the physical custodian does not, by itself, alter the analysis. Id.

12. The instrument that causes Petitioner's restraint has followed him to the Maldives. The Turkish Administrative Detention Decision and Deportation Decision identify, as the sole stated ground for detention, an INTERPOL Green Notice issued at the international level for the offense of terrorism and a derivative G-87 security restriction code (Exhibit 1;[1] Exhibit 2). The Istanbul 2nd Criminal Magistrate Court of Peace upheld the detention on that same basis (Exhibit 3; Exhibit 5). The United States requested the Green Notice (Exhibit 6, at 1). The Maldives, as an INTERPOL member state, has access to the Notice through INTERPOL's I-24/7 network. The same instrument that caused Petitioner's

[1] The Exhibits that are provided in both Turkish and English will be filed with a certificate verifying the translation when they are filed with the amended and supplemental habeas petition.

detention in Turkey continues to restrain his liberty in the Maldives and prevents him electronically returning to the United States.

13. The United States retains the power to terminate the restraint. A single act by the United States—withdrawing, or supporting the withdrawal of, the Green Notice—would eliminate the sole stated basis for Petitioner's prior detention and would permit his return to the United States. That is the "power to produce" that *Munaf* and *Abu Ali* require. *See Abu Ali*, 350 F. Supp. 2d at 68 (identifying as probative whether "the petitioner would be released upon nothing more than a request by the United States"). Under *Abu Ali*, a petitioner need not show that the United States controls the foreign sovereign's every act; it is enough that the foreign sovereign acts at the behest of, or as an intermediary for, the United States. *Id.* at 41.

**C. The Case Is Not Moot**

14. The case is not moot. "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984). Petitioner continues to suffer an ongoing injury—separation from his family, inability to return to his own country, and the imminent prospect of being stranded in a foreign country with no lawful means of return. Petitioner has a concrete interest, and effectual relief remains available. The Court can order Respondents to withdraw the Green Notice, remove Petitioner from the No-Fly List or otherwise no block Petitioner from returning to the United States, and permit him to return to the United States. Any of those orders would redress Petitioner's injury.

15. The Court retains the power to grant effectual relief even after the change in custodial status. In *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), the Supreme Court held that a case is not moot merely because of a change in circumstances, so long as there remains a live controversy and the possibility of effectual relief. That principle applies here.

16. To the extent Respondents may contend that the case is moot because the United States has ceased to detain Petitioner through Turkish authorities, the voluntary cessation doctrine applies. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the

practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The United States caused Petitioner's detention in Turkey and then permitted or facilitated his transfer to the Maldives without his consent and without removing the instruments that prevent his return. The United States cannot now avoid judicial review by pointing to the change in custodial status that its own conduct produced.

**D. The Immediate Custodian Rule Does Not Defeat Jurisdiction**

17. *Rumsfeld v. Padilla*, 542 U.S. 426, 451 n.16 (2004), recognizes an exception to the immediate custodian rule for "American citizens confined overseas (and thus outside the territory of any district court)." The exception applies with equal force whether Petitioner is held in Turkey, the Maldives, or any other foreign state. *See also Abu Ali*, 350 F. Supp. 2d at 42-45 (discussing the exception and its application).
18. In addition, the "custodian" for purposes of this case is the United States official charged with Petitioner's restraint—the official with the "power to produce" him—not the foreign official who happens to hold him. *Munaf*, 553 U.S. at 686. Petitioner has named as Respondents the federal officials who maintain the No-Fly List, the INTERPOL Green Notice, and the policies that prevent his return to the United States. Those officials reside and operate within this District, and venue is proper here.

**III. CONTINUING IRREPARABLE HARM**

19. Petitioner faces imminent and irreparable harm if this Court does not act. His permitted stay in the Maldives will expire within thirty days, with a possible extension of up to ninety days. If his stay is not extended, or if the extension expires, he will have no lawful place to go. He cannot return to the United States because of the No-Fly List and the Green Notice. He cannot return to Turkey because the Turkish authorities removed him. He has no other country that will accept him.
20. Petitioner has limited financial resources and cannot support himself in the Maldives beyond the immediate term. He has no family, no employment, and no permanent residence there. His health remains impaired. His separation from his wife and nine United States citizen children—now exceeding twenty-two years—continues.

21. The harm Petitioner faces is the direct consequence of Respondents' conduct. The United States requested the Green Notice, maintains the No-Fly List, and has repeatedly blocked Petitioner's return. If Respondents withdrew the Green Notice and removed Petitioner from the No-Fly List, he could return to the United States immediately.

## IV. RELATED FILINGS

22. By the October 8, 2026, deadline set by the Court Petitioner will file (i) an Amended and Supplemental Petition for a Writ of Habeas Corpus reflecting the change in custodial status and the other developments since July 2, 2026; (ii) a Motion for Leave to File the Amended and Supplemental Petition; (iii) a Request for Summons to Issue; and (iv) a Motion for Extension of Time to Serve Process. Petitioner will promptly supplement this Notice if and when additional information about his circumstances becomes available.

## V. REQUESTED ACTION

23. Petitioner respectfully requests that the Court take notice of the change in Petitioner's custodial status and his presence in the Maldives and his position.

Respectfully submitted by:

/s/ Dr. Curtis F.J. Doebbler .
Dr. Curtis F.J. Doebbler
D.C. Bar No. 481243

Date: September 30, 2026